UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| CURT LOWDER, | |
|---|---|
| Plaintiff, | |
| v. | CAUSE NO.: 3:19-CV-551-RLM-MGG |
| WARDEN NEAL, et al., | |
| Defendants. | |

OPINION AND ORDER

Curt Lowder, a prisoner without a lawyer, filed a motion for a preliminary injunction seeking protective custody. The purpose of preliminary injunctive relief is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc., 149 F.3d 722, 726 (7th Cir.1998). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." Joelner v. Village of Washington Park, Illinois, 378 F.3d 613, 619 (7th Cir. 2004).

Mr. Lowder alleges that, in April 2019, he lived in B cellhouse and gave Lieutenant Wilson a detailed letter asking for protective custody based on the threat posed by other inmates in the cellhouse. Lieutenant Wilson moved Mr. Lowder to another cell on the first floor and secured him in the cell. He told Mr.

Lowder that he would remain in that cell until the protective custody paperwork could be processed. Mr. Lowder responded that he still felt vulnerable and unsafe from the other inmates in the cellhouse. Mr. Lowder withdrew his request for protective custody the following morning and was released from the cell. In June 2019, Mr. Lowder again requested protective custody but again withdrew it after he was told that he would need to be placed in secured cell on the first floor.

Mr. Lowder says that on June 14, 2019, correctional staff found him with a weapon, which he had obtained because he believed he needed for self-defense. He was moved to D cellhouse. On June 30, inmates from D cellhouse, who had been in contact with the inmates from B cellhouse, poisoned and drugged Mr. Lowder. After threatening self-harm, Mr. Lowder was placed in a suicide watch cell in D cellhouse. Shortly thereafter, Mr. Lowder began experiencing a burning sensation, which he believed was pepper spray or chemical burns. He later saw an inmate sprinkling dust into a fan blowing in Mr. Lowder's cell. Mr. Lowder spit on a correctional officer and was moved to a maximum security cell. On July 13, Mr. Lowder was moved back to a cell in D cellhouse, where he remains in danger from attacks by other inmates. He seeks placement in protective custody.

Warden Neal responded with a declaration stating that inmates request who request protective custody are placed in a cell near the officer's station in the cellhouse pending a decision from the unit team manager. On April 23, 2019, Mr. Lowder requested protective custody but withdrew the request before a decision had been reached. On June 14, 2019, Mr. Lowder was sent to restrictive housing after he was found with a shank in his pocket. In July 2019, Investigator

2

Rodriguez investigated Mr. Lowder's claims of other inmates targeting him, but she could find nothing to substantiate these claims.

According to Warden Neal's declaration, inmates in restrictive housing are handcuffed and escorted whenever they leave their cells. Mr. now currently has his own cell, showers alone, and has recreation time alone in a recreational cage. Correctional staff don't let Mr. Lowder be in the presence of other inmates unless they are also handcuffed and escorted by correctional staff. Mr. Lowder has been disciplined for physical resisting staff and battery on staff since his assignment to restrictive housing, so he will remain in restrictive housing until at least December 14, 2019, when correctional staff will review his housing assignment. Given the nature of his disciplinary history, he will likely remain in restrictive housing thereafter.

In reply, Mr. Lowder alleges that, in his housing unit, he is frequently in the presence of unsupervised and unshackled inmates, including those from other housing units who distribute meals, collect laundry, or clean. He adds that inmates from his housing unit can pick the locks for their cells. Though he can't identify which inmates are causing the chemical burns, he continues to experience them, and they seem to coincide with the times when inmates from other housing units are present.

After reviewing Mr. Lowder's reply, the court deferred a ruling on the motion for a preliminary injunction and granted the Warden a chance to address the issues raised in the reply. The court asked the Warden to explain any investigation that took place with respect to Mr. Lowder's reports of being

targeted or his requests for protection, whether other inmates have unsupervised access to Mr. Lowder's cell, and how medical staff have responded to Mr. Lowder's reports of chemical burns.

The Warden filed a supplemental affidavit. He concedes that inmates who serve as porters have some access to Mr. Lowder, but those these inmates are screened and supervised, which significantly reduces the risk of them attacking Mr. Lowder. Notwithstanding that some inmates have access to Mr. Lowder even in disciplinary segregation, the Warden has conducted a substantial investigation into Mr. Lowder's allegations but has been unable to find any evidence to support them. Additionally, though Mr. Lowder seeks housing in the protective custody unit, inmates in that unit have more physical freedom and opportunity to interact with other inmates than those in disciplinary segregation.

The Warden explains that he directed Investigator Rodrigues to investigate the requests for protective custody. On July 12, 2019, she interviewed Mr. Lowder, who told her that he thinks other inmates are targeting him due to his involvement in a bar fight with a members of a biker gang fifteen years earlier. He told her that he claimed to be suicidal so that he could leave disciplinary housing. He told her that he believed that his smock had lingering pepper spray on it until he saw an inmate sprinkling burning chemical powder on him. He also told her that other inmate employees sprayed him with chemicals in holes that they had drilled into his cell wall and that other inmates in the housing unit had yelled threats of violence at him from their cells. Investigator Rodriguez

4

couldn't corroborate any of these reports or find any indication that Mr. Lowder had ever been attacked at the Indiana State Prison.

Mr. Lowder gave Investigator Rodrigues the names or aliases of those he believed were targeting him. Investigator Rodriguez couldn't confirm the identity of many of these individuals and discovered that another individual had been released. She further discovered that two of the inmates resided in other housing units but no indication that Mr. Lowder had previously identified them as threats or that they had ever harmed him. She also consulted with law enforcement agencies that specialized in biker gangs and couldn't verify that any of the named individuals were associated with biker gangs.

On August 9, 2019, Investigator Rodrigues told Mr. Lowder about the results of her investigation. He told her that his reports might have been inaccurate due to his use of methamphetamine. Mr. Lowder underwent a urinalysis, which confirmed that he had obtained and used methamphetamine. On September 25, another investigator tried to interview Mr. Lowder, but he refused to cooperate.

The Warden also consulted with medical staff during the course of his investigation. On July 22, 2019, Mr. Lowder told a nurse that he had used methamphetamine and that he had an irregular heartbeat, difficulty breathing, and stinging sensations all over his body. The nurse saw served no signs of skin irritation, shortness of breath, or heart complications. He also sought medical attention on other occasions for methamphetamine use, acid reflux, and hip pain, but did not complain of skin irritation. In July 2018, Mr. Lowder started

receiving regular treatment from mental health staff, and his reports to them about his need for protection has substantially mirrored his reports to Investigator Rodriguez. He has received a diagnosis of anxiety disorder and prescriptions for medication.

To obtain a motion for a preliminary injunction, Mr. Lowder must demonstrate a reasonable likelihood of success on the merits. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[I]n order to state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that [she] was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety. Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010). In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." Brown v. Budz, 398 F.3d 904, 911 (7th Cir. 2005). In such cases, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." Pope v. Shafer, 86 F.3d 90, 92 (7th Cir. 1996).

The correctional staff has undertaken substantial efforts to investigate Mr. Lowder's requests for protection. According to the record, an investigator was assigned to look into Mr. Lowder's reports, and, when that investigator couldn't corroborate these reports after a reasonable investigation, Mr. Lowder conceded that his reports may have the result of methamphetamine use, and he refused

to cooperate with further attempts to investigate. The record further indicates that medical staff found no indication of skin irritation but responded to his reports by treating him for substance abuse and anxiety disorder. It also indicates that the correctional staff have housed Mr. Lowder in a disciplinary segregation unit, which allows only minimal contact with other inmates. In sum, the record wouldn't allow a finding that correctional staff are acting with deliberate indifference to Mr. Lowder's requests for protection. The court can't conclude that Mr. Lowder is reasonably likely to succeed on the merits of his claim.

Mr. Lowder must also show that he will suffer irreparable harm unless he obtains injunctive relief. While Mr. Lowder may believe that he remains in danger from other inmates even in restrictive housing, the record contains no evidence beyond Mr. Lowder's reports regarding chemical powder, holes drilled into his cell wall, and threats or incident of violence, despite internal investigations and numerous visits to medical unit. Mr. Lowder's drug use, his apparent desire to leave the disciplinary unit, and his recent refusal to cooperate with an investigator further undermine the credibility of these reports. Nor is it clear that Mr. Lowder would be safer in protective custody given the freedom of movement and privileges afforded to the inmates in that unit. As a result, the court cannot find that Mr. Lowder will suffer irreparable harm absent injunctive relief.

Additionally, with respect to the competing and public interests, unnecessary intrusions into the management of prisons are generally disfavored. See 18 U.S.C. § 3626(a) (prison-related injunctions must be necessary to remedy

the violation and narrowly tailored); Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012) ("Prison officials have broad administrative and discretionary authority over the institutions they manage."). In conclusion, the court has considered the relevant factors and finds that Mr. Lowder is not entitled to a preliminary injunction.

As a final matter, Mr. Lowder hasn't filed a complaint and hasn't resolved his filing fee status. Now that the motion for a preliminary injunction has been resolved, Mr. Lowder must address these deficiencies promptly if he intends to proceed with this case. To file a complaint, he should obtain the court's approved form from the prison law library, and he must put the case number of this case on it, which is on the first page of this order. In the complaint, he must describe his interactions with each defendant in detail, including names, dates, location, and explain how each defendant was responsible for harming him. Further, Mr. Lowder must address his filing fee status by either immediately paying the filing fee in full or by filing a motion for leave to proceed in forma pauperis. If he chooses to file a motion for leave to proceed in forma pauperis, he should obtain the court's form motion and file it with his prison account summary for the last six months attached.

For these reasons, the court:

(1) DENIES the motion for a preliminary injunction (ECF 1); and

(2) GRANTS Curt Lowder until November 4, 2019, to file a complaint and to resolve his filing fee status.

If Mr. Lowder doesn't respond by this deadline, this case will be dismissed without further notice.

SO ORDERED on October 9, 2019

s/ Robert L. Miller, Jr.  
JUDGE  
UNITED STATES DISTRICT COURT